### TRACTION CONDUCTOR CAUGHT BETWEEN CAR AND BUILDING.

Circuit Court of Lucas County.

### GEORGE W. STRANG v. THE TOLEDO TRACTION COMPANY AND THE TOLEDO RAILWAYS & LIGHT COMPANY.*

Decided, February 24, 1908.

*Negligence—Conductor Injured While Obeying an Order—Whether He Acted with Prudence and Care a Question for the Jury—Construction to be Placed on the Order as Shown by Surrounding Circumstances—Error in Directing Verdict for Defendant.*

1. If by a fair construction of an order given by a superior to a servant, a person acting with ordinary prudence and exercising ordinary care would, under the circumstances, have considered it an unequivocal specific order to do a certain thing, the master can not escape liability for the consequences by showing that the order was open to another construction, and was not in fact intended to be understood as the servant understood it in acting, as he supposed, in obedience thereto.

2. Whether the servant failed to exercise ordinary care in interpreting the order in the manner in which he did interpet it is a question for determination by the jury in the light of all the surrounding circumstances.

---

* Dismissed in the Supreme Court, February 23, 1909, on motion of the Toledo Railway & Light Co., plaintiff in error, at its costs.

*C. A. Thatcher,* for plaintiff in error.
*Smith & Baker,* contra.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

George W. Strang was a conductor on one of the cars of the traction company in this city. On the 23d day of February, 1901, the car upon which he was acting as conductor became disabled, and it became his duty to take it to the car barn, on Water and Monroe streets. There he and his motorman, Mr. Lorenz, left the car upon the street and proceeded over to the barn to take out another car, which was in readiness for them and which they had been directed to take. As they approached the front of the car barn, the doorway from which the cars issue onto the street, the car which they were to board and manage was being brought out from the car barn onto the street by a Mr. Struck, who was a superintendent and who was the superior of Strang and Lorenz in authority. Mr. Struck was upon the front of the car, managing it, but it appears that there was no one at the rear of the car to manage the trolley. As the car came out of the barn and came toward Strang and Lorenz, and while Strang and Lorenz were proceeding toward the car barn, Struck, on the front of the car, came near to where Strang and Lorenz had, for the time being, paused, and as the front of the car upon which Struck stood passed by Lorenz and Strang, Strang says that Struck, looking toward him, and, as he supposed, addressing him, said: ''Look out for the trolley back there.'' Lorenz states the matter in nearly the same way, but does not put exactly the same words into the mouth of Struck; he says that the words used were: ''Take care of the trolley.''

There appears to be no dispute but what the duty of looking after the trolley and managing it—taking care of it—devolved upon the conductor, and that the duty to take care of this particular trolley on this car did then, or would have soon thereafter devolved upon Strang. Strang seems to have understood the direction, according to his testimony, as one to him to proceed immediately to the rear of the car and to board it and take care of the trolley. In his third amended petition, he says, among other things:

"It was necessary in the operation of the said car from said barn that some person should be at the trolley-rope so as to govern and control said trolley, so that no damage would be done to the overhead construction of the wires and other appliances belonging to the defendant company should said trolley-pole come off the wire."

It appears that upon the utterance of these words by Struck, Strang proceeded into the door as the car was coming out. The car was one of the larger patterns of cars used in the city. The door was wide enough—there was enough space between the side of the car and the side of the door, or jamb, to admit of Strang passing through and going to the rear of the car, provided the track had continued straight out of the barn; but, after the front of the car had gone some distance from the barn, it began to turn toward the right—that is toward the right of Struck, who was upon the car managing it. It turned in a track which it had to follow in order to bring it into Monroe street. The effect of the car thus turning upon the track was to swing the rear end of the car toward the left, that is toward the side of the door where Mr. Strang had entered, and the construction of the opening, and of the doors that were swung open there was such, that when the car swung in this way, it did not leave sufficient room for Strang to proceed upon his way toward the rear of the car. The operation of the car resulted in pocketing him there—it operated as a sort of a trap, so that he was caught between the rear end of the car and the jamb of the door. As the car was brought onto Monroe street and the rear end of the car came out of the door, it left but a few inches between the jamb of the door and the rear end of the car and there Strang was caught and pinched—crushed, so that he sustained very serious injuries.

It is charged by Strang, the plaintiff and the plaintiff in error, that there was negligence on that occasion upon the part of Struck in thus directing him to look out for the trolley or to take care of the trolley; that Struck, his superior, was well acquainted with the situation and the conditions prevailing there; that Strang himself was unacquainted with the place and was not aware of the fact that the car continuing in this way would be swung around in such a way as to catch him between the car and the door jamb.

There are other grounds of negligence alleged in the petition, but this is the only one that we think the evidence tended fairly to sustain, and, therefore, it is the only one to which we will give attention.

After the evidence had been put in on behalf of the plaintiff, on motion of the defendant, the cause was withdrawn from the jury, or rather, the jury was instructed to return a verdict in favor of the defendant, which it did. Of this action Strang complains. The case is evidently founded upon the doctrine of what is known as the Schelies case, found in 61 Ohio State, at page 298, and we think the evidence tends to establish a case coming within the principles laid down in that case.

It is true that the order to look out for the trolley, or to take care of the trolley, was not a distinct and unequivocal order to Mr. Strang to pass through that door at that time and to undertake to board the car; it was an order which, possibly, was not directed to him. It might have been, perhaps, intended as a warning to him to look out for himself that he might not be injured by the trolley-pole; it might, perhaps, have been intended as a direction to some other person in that vicinity to look out for the trolley-pole, but under the circumstances, we think it was open fairly to the construction upon the part of Strang that it was an order directed to him to at once proceed to his duty to board the car and take care of the trolley. Whether it was so intended and whether it was so understood, were questions, we think, that under the state of the case as it was submitted or as it stood at the time the plaintiff's evidence was in, should have been submitted to the jury. The question whether Struck intended to direct Strang to proceed at once to board the car, which would have required Strang to attempt to pass through the door; the question whether it was so understood by Strang, were, in our judgment, questions to be submitted to the jury. If an unequivocal order is given by a representative of a company in authority, to one who is under him and subject to his order, that such servant shall proceed in a certain way, or that might be understood by the servant as an order to him to proceed in a certain way, if such order might be so understood by the servant without negligence upon his part, if in the exercise

of ordinary care he might have so understood the order, then the servant may act upon the order and the employer will be responsible for the consequence, and the employer in that case could not escape responsibility by showing that something else was intended. If, in other words, by a fair construction, an ordinarily prudent person, in the exercise of ordinary care under the circumstances, would understand the order as Mr. Strang seems to have understood it, and would have proceeded as Mr. Strang appears to have proceeded, then responsibility for the results can not be escaped by showing that the order was open to another construction—that it was not in fact intended as the employe understood it; for the giving of such unequivocal order, under the circumstances, where harm might naturally follow from it, is of itself a kind of negligence.

We think the evidence tended to show that this order was given, that it was given to Strang, that it was understood by Strang as he says and that a fair and reasonable interpretation of it would require the action upon the part of Strang that he took upon this occasion, and that since the evidence tended to show all these things, there was a case which should have been submitted to the jury.

At page 10 of the record Mr. Lorenz, the motorman who worked with Strang, was asked this question: "What if any danger was there to the overhead construction if the trolley is not attended when coming out of the barn?" That was objected to and the objection sustained. The plaintiff excepted and offered to show that there was danger of the trolley jumping the wire and tearing down the overhead construction. We are not advised of the reason that moved the court to sustain this objection. It may be that there was something in the form of the question that seemed to be objectionable; it may be that it would have been better to ask what the effect would have been. rather than to ask what if any injury there would be; but, passing by questions of mere form, we have to say that we think the witness should have been permitted to state the probable effect of inattention to the trolley while the car was being operated out of the barn, for it is alleged, as I have read, that the effect would have been, if the trolley had slipped off—as it was apt to

do—that the overhead construction would have been destroyed. If that were shown, if it were shown furthermore, as it might have been, perhaps, that Strang knew this, it would go a great ways towards throwing light upon the question of what was meant by the direction to "Look out for the trolley," and what was understood by Strang as his duty under such directions—in other words, if it were true that the trolley was apt to slip off and destroy the overhead work and do damage to the company's property—if that were a thing known to the superintendent who gave the direction and known to Strang, who may be found by the jury to be the person to whom the direction was given, then the jury might well find that it was not intended by that direction—was not fairly understood by Strang that he should simply stay in the position where he was until the car came out to him, allowing whatever might to happen to the overhead construction through inattention to the trolley; but the jury might from evidence of such conditions, find that it was intended and that it was understood by Strang that he should proceed immediately to the rear of the car and board it and take care of the trolley before the trolley had reached the point where such damage might result from inattention to it.

The judgment will be reversed and the cause remanded because of error of the court in withdrawing the case from the jury and directing a verdict.

---

## INSUFFICIENT GROUND FOR AN INSTRUCTED VERDICT.

Circuit Court of Hamilton County.

ALVA GREEN V. C., L. & A. TRACTION COMPANY.

Decided, January, 1911.

*Negligence—Pony Cart in Collision with Traction Car—Variance in Plaintiff's Testimony.*

Variance in the testimony of a plaintiff on direct and cross-examination is not, taken alone, sufficient ground for a non-suit.